# 𝕴𝖓 𝖙𝖍𝖊 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕱𝖊𝖉𝖊𝖗𝖆𝖑 𝕮𝖑𝖆𝖎𝖒𝖘

No. 16-1063C
(Filed: May 30, 2017)*
**\*Opinion originally filed under seal on May 12, 2017**

| | |
|---|---|
| PDS CONSULTANTS, INC., ) | |
| Plaintiff, ) | |
| v. ) | Bid Protest; Veterans Benefit Act of 2006, |
| THE UNITED STATES, ) | 38 U.S.C. § 8127(a); Javits-Wagner- |
| Defendant, ) | O'Day Act, 41 U.S.C. § 8501-06; |
| and ) | Contracting Priority; *Kingdomware* |
| WINSTON-SALEM INDUSTRIES FOR ) | *Technologies, Inc. v. United States*, 136 S. |
| THE BLIND, ) | Ct. 1969 (2016); AbilityOne Program |
| Defendant-Intervenor. ) | |

*David S. Gallacher*, Washington, DC, for plaintiff. *Emily S. Theriault*, Washington, DC, of counsel.

*Jeffrey M. Lowry*, Civil Division, United States Department of Justice, Washington, DC, with whom were *Chad A. Readler*, Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Douglas K. Mickle*, Assistant Director, for defendant. *Harold W. Askins III*, Staff Attorney, Department of Veterans Affairs, of counsel. *Timi N. Kenealy*, General Counsel, and *John Konst*, Assistant General Counsel, Committee for Purchase from People who are Blind or Severely Disabled, of counsel.

*James K. Kearney*, Tysons Corner, VA, for defedant-intervenor. *Gary H. Nunes* and *Joshua L. Rodman*, Tysons Corner, VA, of counsel.

*Tracye Winfrey Howard*, Washington, DC, for National Industries for the Blind, *Amicus Curiae*.

**O P I N I O N**

**FIRESTONE**, *Senior Judge*.

This bid protest concerns the construction of two statutes: the Veterans Benefits Act of 2006 ("VBA"), 38 U.S.C. § 8127(a), and the Javits-Wagner-O'Day Act, 41 U.S.C. § 8501-06 ("JWOD").  The VBA requires the Department of Veteran's Affairs ("VA") to set goals for providing contracts to veteran-owned small businesses, and with exceptions not relevant here, mandates that before procuring goods and services the VA first determine whether there are at least two veteran-owned small businesses capable of performing the work.  If so, the VA must limit competition to veteran-owned small businesses.[1]  This process is known as a "Rule of Two" analysis.   The JWOD requires government agencies, including but not limited to the VA, to purchase products and services from designated non-profits that employ blind and otherwise severely disabled people when those products or services appear on a list known as the "AbilityOne List" or "List."  The entity responsible for placing goods and services on the List is known as

---

[1] The priority system is set forth in 38 U.S.C. § 8127(i).  It establishes a first priority for small businesses owned and controlled by veterans with service-connected disabilities.  In this opinion both preferences are labeled as a priority for small business owned and controlled by veterans:

> Priority for contracting preferences.—Preferences for awarding contracts to small business concerns shall be applied in the following order of priority:
>> (1) Contracts awarded pursuant to subsection (b), (c), or (d) to small business concerns owned and controlled by veterans with service-connected disabilities.
>> (2) Contract awarded pursuant to subsection (b), (c), or (d) to small business concerns owned and controlled by veterans that are not covered by paragraph (1).
>> (3) Contracts awarded pursuant to –
>>> (A) section 8(a) of the Small Business Act (15 U.S.C. 637(a)); or
>>> (B) section 31 of such Act (15 U.S.C. 657a).
>> (4) Contracts awarded pursuant to any other small business contracting preference.

38 U.S.C. § 8127(i).

the "AbilityOne Commission."  The question before the court in this case is which

procurement priority must the VA first employ: the requirement that the VA conduct a

Rule of Two analysis to determine whether it must restrict the procurement to veteran-

owned small businesses under the VBA or the requirement that the VA use the

AbilityOne List under the JWOD, regardless of whether the VA has conducted a VBA

Rule of Two analysis.

The VA, faced with these potentially contradictory contracting preferences,

originally took the position in this litigation that if a product or service appears on the

AbilityOne List for a particular region of the country the JWOD requires the VA to

purchase that product off of the List without first performing a Rule of Two analysis.

However, during the pendency of the litigation, the VA changed its position through

regulation.[2]  The VA now agrees that if a product or service was added to the AbilityOne

List after 2010, the VA will perform the Rule of Two analysis before purchasing off of

the List.  The new regulation provides, however, that the VA will continue to purchase

items off of the AbilityOne List without first performing a Rule of Two analysis for items

added to the List before 2010.  Plaintiff, PDS Consultants, Inc. ("PDS"), is a service-

disabled veteran-owned small business that provides eyewear and other vision-related

products to the VA under a number of contracts corresponding to different regions of the

country.  PDS argues that under the Supreme Court's recent decision in *Kingdomware*

*Technologies, Inc. v. United States*, 136 S. Ct. 1969 (2016), the VA is required to perform

---

[2] *See* Veterans Administration Regulation 808.002 issued March 6, 2017.

a Rule of Two analysis for all procurements, regardless of when the item was listed on the AbilityOne List.[3]

The government, defendant-intervenor, Winston-Salem Industries for the Blind ("IFB") and *amicus curiae*, National Industries for the Blind ("NIB")[4] (collectively, "the defendants") argue that the JWOD trumps the VA's VBA obligations if the product or service was added to the AbilityOne List before 2010, when the VA implemented the VBA priority system. In effect, the defendants argue that for products and services in the VA regions that were added to the List before 2010 the VA is permanently exempt from having to perform the Rule of Two analysis.[5]

For the reasons that follow, the court finds that the VA is required to perform a Rule of Two analysis for all procurements after the VBA was passed. Accordingly, the VA may not enter into future contracts with IFB until it performs a Rule of Two analysis and determines whether two or more veteran-owned small-businesses can perform the subject work.

---

[3] As discussed below, PDS initially challenged the validity of all existing contracts with IFB that the VA had entered into without performing a Rule of Two analysis. Following the government's change in its regulations, PDS now appears to be challenging only "new contracting determinations," Pl.'s Supp. Brief 3, including renewing or extending existing contracts, for the contracting regions in which the VA maintains that it need not perform a Rule of Two analysis before renewing or issuing a new contract to organizations on the AbilityOne List.

[4] NIB is the non-profit agency designated to represent non-profit agencies for the blind before the AbilityOne Commission. As such, NIB determines the suitability of products or services for the AbilityOne List and recommends fair market prices for items on the list.

[5] The VBA was passed in 2006. However, as discussed below, the VA's implementing regulations were issued in 2010.

I.      **BACKGROUND**

A.      **The AbilityOne Program**

The JWOD, initially passed in 1938 and as amended in 1971, requires federal agencies to procure products and services from qualified non-profit agencies that employ people who are blind or otherwise severely disabled under a program known as "AbilityOne." 41 U.S.C. § 8501-06.  To that end, the JWOD requires AbilityOne, acting through the presidentially-appointed AbilityOne Commission ("Commission"), to establish and maintain a procurement list ("AbilityOne List" or "List") of "suitable" products and services produced by non-profits that AbilityOne has qualified as a non-profit organization for the blind or severely disabled. *Id.* at § 8503(a).  After AbilityOne adds a product or service to the List using the Administrative Procedures Act's ("APA") notice and comment procedures, *id.* at § 8503(a)(2), the JWOD states "[a]n entity of the Federal Government intending to procure a product or service on the procurement list . . . shall procure the product or service" from a qualified non-profit agency for the blind or severely disabled.  41 U.S.C. § 8504.  In other words, once an item is added to the AbilityOne List, the JWOD requires federal agencies to purchase that product from the designated non-profit.  According to *amicus* NIB, the VA accounts for approximately 15.1% of the AbilityOne sales to government agencies in 2015, and "provided jobs for approximately 630 blind or visually impaired individuals, many of whom are veterans." NIB Brief at 1.

While the AbilityOne Commission has final authority for adding products and services to the List, it has historically worked with agencies, including the VA, when

determining what items should be added to the List.  41 U.S.C. § 8503(d) (giving the

Commission authority to add items to the procurement list); Administrative Record

("AR") 708 ("Although the Javits-Wagner O'Day Act gives the Commission statutory

authority to determine which products or services are suitable to be added to the

[AbilityOne List], the Commission strives to accomplish its mission of creating

employment through cooperation and collaboration between the Commission and other

federal agencies.").

Prior to the passage of the VBA in 2006, AbilityOne added eyewear and eyewear

prescription services provided by defendant-intervenor IFB, a qualified non-profit, to the

List for specific regions, referred to as Veterans Integrated Service Network ("VISNs").

The eyewear and eyewear prescription services were added with the VA's concurrence

and participation.  Working in coordination with the VA, AbilityOne added to the List

eyewear prescription services for VISN 7 in 2002, and added VISN 2 in 2005.  Once on

the List the VA entered into contracts with IFB "to produce and provide prescription

eyeglasses and associated services to eligible veteran beneficiaries serviced by VA

Medical Centers and all affiliated out-patient clinics . . . . The eyeglasses will be made to

the individual veteran's prescription."  AR 275.

## B.    The Veterans Benefit Act

Congress passed the current version of the VBA on December 22, 2006, PL 109–

461,  December 22, 2006, 120 Stat. 3403.  The purpose of the VBA was to "increase

contracting opportunities for small business concerns owned and controlled by veterans

and small business concerns owned and controlled by veterans with service-connected

disabilities." 38 U.S.C. § 8127(a).  To that end, the VA is required to set specific annual

goals for VA contracts to be awarded to veteran-owned small businesses and service-

disabled veteran-owned small businesses.  *Id.* at § 8127(a)(1).  Further, the VBA included

the "Rule of Two," which restricts competition for contracts to veteran-owned small

businesses and service-disabled veteran-owned small businesses in cases where the

contracting officer "has a reasonable expectation that two or more small business

concerns owned and controlled by veterans will submit offers and that the award can be

made at a fair and reasonable price that offers best value to the United States."  *Id.* at §

8127(d).  Unlike the JWOD which applies across government agencies, the VBA applies

only to services and supplies procured by the VA.  *See* 48 C.F.R. § 819.7002; *Angelica*

*Textile Servs., Inc. v. United States*, 95 Fed. Cl. 208, 222 (2010).

> **C.** **The VA's Attempts to Integrate their Obligations under the JWOD**
>    **with their Obligations under the VBA**

>    **1.** **The 2010 Guidelines**

In 2010, the VA issued its initial guidelines addressing the potential conflict

between the VBA and the JWOD.  As this court explained in *Angelica Textile*, 95 Fed.

Cl. at 213-214, the VA's guidelines stated that the agency would give first priority to all

items already on the AbilityOne List.  However, the VA determined that before working

with AbilityOne to add any new items to the AbilityOne List, the VA's contracting

officer ("CO") would first perform a Rule of Two analysis to determine whether

qualifying veteran-owned small businesses were able to perform the procurement.  *Id.*

In *Angelica Textile*, the court found that the VA contracting officer did not follow the VA's guidelines when laundry services formerly performed by a veteran-owned small business were added to the AbilityOne List without the VA performing a Rule of Two analysis first. *Id.* at 214.[6] The court found that the question of whether the VA's failure to follow its guidelines was arbitrary, capricious, or not in conformity with the law turned on "the relationship between the [VBA] and [JWOD], and the degree of deference the court owes to the [VA]'s New Guidelines." *Id.* at 220. The court found that the VA's guidelines did not have the force of law, but were nevertheless entitled to *Skidmore* deference. *Id.* at 221-22. In finding that the VA's decision to give veteran-owned small businesses priority when adding items to the List was reasonable, the court noted that it is "a general maxim of statutory interpretation that a specific statute of specific intention takes precedence over a general statute, particularly when the specific statute was later enacted." *Id.* at 222 (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384-85, (1992); *NISH v. Rumsfeld*, 348 F.3d 1263, 1272 (10th Cir. 2003); *NISH v. Cohen*, 247 F.3d 197, 205 (4th Cir. 2001)). The court found that "[w]here there is a conflict between the two statutes, the more specific Veterans Benefits Act would control." *Id.* The court found, however, that though the statutes were in "tension," they were not "in direct conflict" with each other. *Id.*

---

[6] The government argued that the CO's actions were not arbitrary and capricious because the guidelines did not go into effect until after the CO began the procurement process. *Id.* at 220. The court rejected this argument because the guidelines explicitly stated that they were to go into effect immediately. *Id.*

8

Under those circumstances, the court found the VA's "action in giving first priority to [veteran-owned small businesses] is justified in light of the terms of the [VBA]." *Id.* Accordingly, the court concluded that that the CO's actions in assisting AbilityOne in adding the laundry services to the List before following the guidelines' instruction to first perform a Rule of Two analysis "lacked a rational basis and were arbitrary and capricious." *Id.* Therefore, the court held that "the laundry services listing shall be elided from the AbilityOne List without prejudice against future placement." *Id.* at 223.

Following the VA 2010 guidance documents and the *Angelica Textiles* decision, AbilityOne "ended cooperation and collaboration between the AbilityOne Program staff and VA contracting officers regarding PL additions." AR 708. Thereafter, AbilityOne began to add items unilaterally. AbilityOne took the position that because the VBA only applied to the VA, and not to AbilityOne, therefore AbilityOne was not required to perform the Rule of Two analysis before adding items to the List. *Id.* Rather, AbilityOne contends it has a statutory mandate to continue to add items to the List. *Id.* Because the VA could no longer participate in List additions without first performing a Rule of Two analysis, the AbilityOne Commission determined that the VA "has effectively made unilateral decisions by the Commission the only means to accomplish its statutory obligations when making additions to the PL for VA optical products and/or dispensary services." *Id.*

In 2013, 2014, and 2015, AbilityOne added and expanded the List for parts of VISN 8, again leading to a contract between IFB and the VA.  Def.'s MJAR 6 (citing AR Tabs 24, 25, 28, and 10).

### 2.    The *Kingdomware* Decision and the VA's July 2016 Policy Memorandum

The scope of the VA's VBA responsibilities was recently addressed by the Supreme Court in *Kingdomware Technologies, Inc. v. United States*, 136 S. Ct. 1969, 1977 (2016).  At issue in that case was the VA's position that if the VA was meeting its annual goals for contracts with veteran-owned small businesses as required by law, the VA had the discretion to issue contract awards under the Federal Supply Schedule ("FSS") (a list of certain products and services that government agencies can quickly acquire without having to go through the ordinary procurement process) without performing a Rule of Two analysis.  *See* 74 Fed. Reg. 64624 (2009).  Kingdomware Technologies, Inc., a veteran-owned small business, challenged the VA's interpretation of the VBA, and on June 16, 2016, the Supreme Court issued a unanimous decision finding that the VBA's Rule of Two was mandatory for the procurement of all VA goods and services and not, as the VA argued, discretionary if the VA was meeting its VBA contracting goals.

In rejecting the government's argument that the VA could purchase items from the FSS without performing a Rule of Two analysis, the Court explained that the text of § 8127 "requires the Department to apply the Rule of Two to all contracting determinations and to award contracts to veteran-owned small businesses."  *Id.* at 1975.  The Court noted

that the VBA stated that the contracting officer "shall award contracts" using restricted competition except for certain enumerated exceptions, and found that the use of the word "shall" "demonstrates that § 8127(d) mandates the use of the Rule of Two in *all* contracting before using competitive procedures." *Id* at 1977 (emphasis added) (citing 38 U.S.C. § 8127(d)).  The court found that "[e]xcept when the Department uses the noncompetitive and sole-source contracting procedures in subsections (b) and (c), § 8127(d) requires the Department to use the Rule of Two before awarding a contract to another supplier.  The text also has no exceptions for orders from the FSS system."  *Id*. at 1977.

In response to the *Kingdomware* decision, the VA issued a policy memorandum, dated July 25, 2016, attempting to reconcile the requirements of the VBA and the JWOD. AR 656-701.  The memorandum stated that the VA had a "continuing requirement to comply with all statutory mandates," including an obligation to purchase items listed on the AbilityOne List.  *Id.* at 666.  A decision tree attached to the memorandum provided that if there was a mandatory source, including items on the AbilityOne List, then the Rule of Two "does not apply."  *Id.* at 701.  However, the VA continued to take the position that before a contracting officer could propose an addition to the AbilityOne List, the contracting officer was required to "conduct market research" and "apply the VA Rule of Two" as required under the VBA.  *Id*. at 678.

On February 12, 2016, AbilityOne issued a notice in the Federal Register proposing the addition of eyewear for all the VA's requirements in VISN 6 to the AbilityOne List.  AR 758-59 (81 Fed. Reg. 7510-11).  After the Supreme Court issued its

decision in *Kingdomware*, PDS wrote a letter to the AbilityOne Commission stating that many of the eyewear products and services that AbilityOne had proposed adding to the List "are the same or similar to the types of eyeglasses many veteran-owned and service-disabled veteran-owned businesses currently provide" to the VA.  AR 702.  PDS asserted that adding VISN 6 to the List would cause the VA to violate § 8127 of the VBA, because *Kingdomware* found that the Rule of Two was mandatory and Congress intended it to cover "*all* VA procurements, including items already on the AbilityOne Procurement List." *Id.* at 703.  On July 19, 2016, PDS wrote the Commission another letter encouraging it to "work with the VA to ensure that the [VA] performs the necessary market research to determine whether the Rule of Two can be satisfied for VISN 6" before adding that VISN to the List. *Id*. at 704.

On August 1, 2016, the AbilityOne Commission voted to add eyewear for VISN 6 to the List.  *Id.* at 727.  In the notice published in the Federal Register, AbilityOne addressed PDS's comments, noting that while the AbilityOne Commission appreciated that it may be possible to purchase eyewear from veteran-owned small businesses:

> [T]he Commission's mission and duty is to provide employment
> opportunites for people who are blind or have significant disabilities, many
> of whom are veterans . . . . Adding the proposed products to the
> Commission's Procurement List will provide employment opportunities to
> a portion of the U.S. population that has a historically high rate of
> unemployment or underemployment, and is consistent with the
> Commission's authority established by 41 U.S.C. Chapter 85.

*Id.* at 761-62 (81 Fed. Reg. 51864).

### 3.     Status of Current Contracts and the 2017 Changes to Interim Regulations

According to the Administrative Record, the VISN 2 contract to IFB was last extended August 30, 2016. AR Tab 2 at AR 75 (stating that the subject contract is extended for five months, ending January 31, 2017).  At oral argument, the government stated that there is a sole-source contract extension in place that expires on September 30, 2017.  Oral Argument Tr. 81:15-23.  The current VISN 7 contract with IFB was awarded July 15, 2016, and is a "five year BPA to be reviewed annually and updated at that time." AR 282, Oral Argument Tr. 82:1-4.  This contract expires on July 14, 2021.   Oral Argument Tr. 82:4.

VISN 6 was added more recently to the AbilityOne List and thus there is no current contract with an AbilityOne contractor.  There is a current contract in place with a service-disabled veteran-owned small business in VISN 8.  Oral Argument Trans. 83:8-10.  In VISN 8, the VA's contract with an AbilityOne contractor expires in May of 2017. Oral Argument Trans. 83:8-10.

On February 13, 2017, two days before oral argument was scheduled on the parties' cross-motions for judgment on the Administrative Record in this case, the government filed a notice of proposed changes in the VA's guidelines that would require VA procurement officials to apply the Rule of Two before procuring an item from the AbilityOne List if that item was added to the List on or after January 7, 2010 (the date the VA issued its initial regulations implementing the VBA) if the Rule of Two analysis was not performed before the item was added to the List.  ECF No. 67.  On March 6, 2017,

the government filed a notice that it had issued a final amendment to its guidelines,

codified in Veterans Administration Acquisition Regulation 808.002, with the

requirements outlined above.  In light of the government's change in position, the court

asked the parties to submit supplemental briefing explaining what issues still remained to

be decided in the pending case.  Supplemental briefing was concluded on March 20,

2017.

The government, plaintiff, and defendant-intervenor all agree that in light of the

new regulations, the plaintiff's challenges to the addition of VISN 6 and VISN 8, which

were added to the List after January 10, 2010, are now moot because the VA has agreed

to perform a Rule of Two analysis before entering into a contract with a vendor on the

List.[7]

With respect to VISN 2 and VISN 7, the plaintiff states that the issue still before

the court is "[w]hether the VA must apply the Rule of Two prior to making new

contracting determinations, including contract awards . . . ."  Pl.'s Supp. Brief (ECF No.

71) at 2.  The court understands from this that PDS is no longer challenging existing

contracts in VISN 2 and VISN 7.  Instead, PDS is challenging the VA's position that it

---

[7] The plaintiff argues that because the VA did not use notice-and-comment rulemaking, and because there appear to be errors in the new guidance, the VA will have to revise the guidance again.  Accordingly, plaintiff argues, the VA could amend or revoke the new guidance at any time "making the issues raised in this case ones that could easily recur and that are not completely mooted by the corrective action."  Pl.'s Supp. Brief 3.  In light of the court's ruling discussed below—that the VA is required to apply the Rule of Two before entering into a contract for items on the List and not previously subject to a Rule of Two analysis—the court rejects the plaintiff's request for an injunction expressly barring the VA from deviating from the regulation presented to the court with regard to post-2010 AbilityOne items that the VA can change its practice in such a manner.

may issue new contracts in VISN 2 and VISN 7 without first performing a Rule of Two analysis after the existing contracts expire.  Accordingly, the only issue that remains before the court is whether the VA may issue additional contracts for VISN 2 and VISN 7 (which were both added to the List prior to the passage of the VBA) to vendors on the List before performing a Rule of Two analysis. [8]

## II.    STANDARDS OF REVIEW

The government has moved to dismiss this case for lack of jurisdiction under Rule of the Court of Federal Claims ("RCFC") 12(b)(1) and the parties have cross-moved for judgment on the administrative record under RCFC 52.1.

The Tucker Act provides this court with jurisdiction to hear bid protests alleging "violation of a statute or regulation in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1).  As the Federal Circuit has explained, the court's bid protest jurisdiction is "very sweeping in scope."  *RAMCOR Servs. Group v. United States*, 185 F.3d 1286, 1289 (Fed. Cir. 1999).  A procurement or proposed procurement for the purposes of the Tucker Act "includes all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout."  *Distributed Solutions, Inc. v. United States*, 539 F.3d 1340, 1345-46 (Fed. Cir. 2008).  In considering a motion to

---

[8] PDS states in its supplemental brief that the question of whether the AbilityOne Commission can unilaterally add products and services to the List without VA input is also an issue before this court.  This issue was discussed at oral argument, but was not addressed in any of the parties' cross-motions for judgment on the administrative record.  Because the plaintiff did not challenge AbilityOne's authority in its initial briefing, and because this issue was affected by the government's change in its guidance letter, the court finds that this issue is not properly before the court.

dismiss for lack of jurisdiction, "a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Acevedo v. United States*, 824 F.3d 1365, 1368 (quoting *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011)).

The APA, 5 U.S.C. § 706(2)(A), provides the applicable standard of review for a bid protest. *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057-1058 (Fed. Cir. 2000). Accordingly, the court's review is limited to determining whether an agency's action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* at 1057. In this case, the plaintiffs are only alleging a violation of the law. Under the Supreme Court's decision in *Chevron, U.S.C. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984), when reviewing a challenge to an agency's interpretation of a statute, a court must first determine whether the statute is ambiguous. If Congress's intent is unambiguous, the court must "give effect to the unambiguously expressed intent of Congress" and end the inquiry. *Chevron*, 467 U.S. at 842. In determining whether the statute is ambiguous, the court "employ[s] traditional tools of statutory construction and examine 'the statute's text, structure, and legislative history, and apply the relevant canons of interpretation.'" *Kyocera Solar, Inc. v. United States Int'l Trade Comm'n*, 844 F.3d 1334, 1338 (Fed. Cir. 2016) (quoting *Heino v. Shinseki*, 683 F.3d 1372, 1378 (Fed. Cir. 2012)). If the statute is "silent or ambiguous," then the court must determine "whether the agency provided 'a permissible construction of the statute.'" *Fitzgerald v. Dep't of Homeland Security*, 837 F.3d 1346, 1353 (Fed. Cir. 2016) (quoting *Chevron*, 467 U.S. at 843).

16

III.     **DISCUSSION**

A.      **The Court has Jurisdiction over PDS's Complaint**

Before reaching the merits of the parties' arguments regarding the proper

construction of the VBA and the JWOD, the court will address the government's

argument that this court lacks jurisdiction over this case.  *See Ultramercial, Inc. v. Hulu,*

*LLC*, 772 F.3d 709, 718 (Fed. Cir. 2014) (noting that "a court must assure itself of its

own jurisdiction before resolving the merits of a dispute . . ." (citing *Diggs v. Dep't of*

*Hous. & Urban Dev*., 670 F.3d 1353, 1355 (Fed. Cir. 2011)).  For the reasons stated

below, the court finds that none of the government's objections deprive this court of

jurisdiction over PDS's protest.

In its initial briefing, PDS challenged both existing contracts between the VA and

IFB and the addition of VISNs to the List when the VA had not first performed a Rule of

Two analysis.  For the first time at oral argument, the government argued that PDS was

required to challenge additions to the List as an APA challenge before a federal district

court, not as a bid protest action in this court, and therefore, the court lacks jurisdiction

over PDS's challenge.  The court disagrees.  Following the government's change in its

regulations in March 2017, PDS is seeking to prevent the VA from awarding future

contracts to IFB in VISNs 2 and 7 without first performing a Rule of Two analysis.  This

is a challenge to the VA's decision not to perform a Rule of Two analysis when the

contract for VISN 2 and VISN 7 expire and are up for renewal.  This court's bid protest

jurisdiction is "very sweeping in scope."  *RAMCOR*, 185 F.3d at 1289.  In fact, the VA

has made it clear that, absent intervention from this court, it will continue to enter into

contracts with IFB for eyewear without performing a Rule of Two analysis in VISNs 2

and 7.  Accordingly, PDS's challenge is "in connection with a procurement or a proposed

procurement," 28 U.S.C. § 1491(b)(1), and thus is within the court's bid protest

jurisdiction.  The government's motion to dismiss is denied.

>        **B.      The VA is Required to Conduct a Rule of Two analysis for New
>                 Contracts Regardless of when the VISN was Added to the Procurement
>                 List**

Turning to the merits of the parties' dispute the court finds the issue to be decided

is correctly stated by the plaintiff.  The plaintiff phrases its understanding of the issue

remaining in this case as "[w]hether the VA must apply the VBA Rule of Two prior to

making new contracting determinations, including contract awards, as indicated in

*Kingdomware Technologies, Inc. v. United States*, 136 S. Ct. 1969 (2016), for products

and services currently listed on the Procurement List for VA facilities located in [VISN]

2 and VISN 7, which were added to the Procurement List prior to January 7, 2010."  Pl.'s

Supp. Brief at 2.  The government phrases its understanding slightly differently:

"Whether the VA reasonably interpreted the [VBA] of 2006 when it identified the pre-

VBA List additions of VISN 2 and VISN 7 as mandatory sources and awarded two

contracts to [IFB] without applying the Rule of Two."  Def.'s Supp. Brief at 2.  The court

finds that the government misstates the issue at hand and that the plaintiff's statement of

the issue is correct.  The question before the court is not whether the VA was wrong to

award the initial contract to IFB, but whether, after passage of the VBA in 2006, the VA

was required to perform a Rule of Two analysis before treating the AbilityOne List as a

mandatory source for any new contracts.  The court finds that the VBA requires the VA

to perform the Rule of Two analysis for *all* new procurements for eyewear, whether or not the product or service appears on the AbilityOne List, because the preference for veterans is the VA's first priority.  If the Rule of Two analysis does not demonstrate that there are two qualified veteran-owned small businesses willing to perform the contract, the VA is then required to use the AbilityOne List as a mandatory source.

The defendants argue that the JWOD and the VBA are not directly in conflict. Further, defendants argue that the VA's solution, as expressed in its new guidelines, which gives effect to both statutes by requiring the VA to perform a Rule of Two analysis for all procurements except for products and services that were put on the AbilityOne List before 2010 should be upheld.  According to the government, neither the VBA nor the JWOD express a priority for competitive awards, and therefore, the VA's construction of the two statutes should be afforded deference under the Supreme Court's decision in *Chevron*.  The government argues that Congress did not "unambiguously express[] a priority for veteran-owned small businesses over mandatory sources identified on the procurement list," Def.'s MJAR 21.  Therefore, the government argues, "the VA is being required to apply two statutory mandates that Congress did not prioritize expressly, this Court should defer to the VA's reasonable construction of the Veterans Benefit Act." *Id.* at 23.

The court agrees that the VBA and the JWOD are not necessarily in conflict in all instances.  However, the VA can necessarily only follow one of the statutes first when a product or service appears on the AbilityOne List.  In that connection, the court must decide whether the VA's decision to exclude pre-2010 AbilityOne listed items from any

VBA reevaluation after enactment of the VBA is lawful.  The court finds that the statutory language of the VBA, as explicated by the Supreme Court in *Kingdomware*, establishes a preference for veteran-owned small businesses as the VA's first priority.  As the Supreme Court stated in *Chevron*, if a statute is clear, the court must "give effect to the unambiguously expressed intent of Congress."  467 U.S. at 843.  The statute is interpreted "employing traditional tools of statutory construction."  *Id.* at 843 n.9.  If "the statutory language is unambiguous and 'the statutory scheme is coherent and consistent . . . the inquiry ceases.'"  *Kingdomware*, 136 S. Ct. at 1976 (quoting *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002)).

Under the VBA, the VA must perform a Rule of Two inquiry that favors veteran-owned small businesses and service-disabled veteran-owned small businesses "in all contracting before using competitive procedures" and limit competition to veteran-owned small businesses when the Rule of Two is satisfied.  *Id.* at 1977.  The VBA states that, except for certain inapplicable exceptions:

> [A] contracting officer of the Department shall award contracts on the basis of competition restricted to small business concerns owned and controlled by veterans if the contracting officer has a reasonable expectation that two or more small business concerns owned and controlled by veterans will submit offers and that the award can be made at a fair and reasonable price that offers best value to the United States.

38 U.S.C. § 8127(d).   The VBA also states that

> In procuring goods and services pursuant to a contracting preference under this title or any other provision of law, the Secretary shall give priority to a small business concern owned and controlled by veterans, if such business concern also meets the requirements of that contracting preference.

38 U.S.C. § 8128(a).  Based on this language, the Supreme Court found in *Kingdomware* that § 8127(d) was mandatory, and therefore "before contracting with a non-veteran-owned business, the Department must first apply the Rule of Two."  136 S. Ct. at 1977. The court found that the mandatory nature of the VBA "demonstrates that § 8127(d) mandates the use of the Rule of Two in *all contracting* before using competitive procedures."  *Id*. at 1977 (emphasis added).

IFB argues that under the language of the VBA the JWOD can be reasonably interpreted as taking priority because the VBA only applies to competitive procurements, and that procurements under the JWOD are not "competitive" procurements.  The court finds, however, that IFB's reading of the VBA is contrary to the Supreme Court's holding in *Kingdomware*, which expressly held that the Rule of Two was "mandatory, not discretionary," and that it thus covered the non-competitive procurements authorized under the FSS.  *See* 136 S. Ct. at 1976.  In this connection, the Supreme Court expressly noted that the VBA contained "no exceptions for orders from the FSS system."  *Id*. at 1977.  Importantly, like the FFS, the VBA also does not contain an exception for obtaining goods and services under the AbilityOne program.  Indeed, the court finds it significant that an earlier version of the 2006 VBA, the Veterans Benefit Act of 2003, contained an explicit exception for contracts under the JWOD which was eliminated in the final legislation.  *See* Pub. L. No. 108–183 § 308, December 16, 2003, 117 Stat. 2651 ("A procurement may not be made from a source on the basis of a preference provided under subsection (a) or (b) if the procurement would otherwise be made from a different source under section 4124 or 4125 of title 18, United States Code, or the Javits–Wagner–

O'Day Act").  The fact that Congress did not include this exception in the 2006

enactment strongly indicates that Congress meant for the VBA to apply before the VA

was required to turn to the AbilityOne List under the JWOD.  It is well settled, "[w]here

Congress includes language in an earlier version of a bill but deletes it prior to enactment,

it may be presumed that the [omitted text] was not intended."  *Russello v. United States*,

464 U.S. 16, 23-24 (1983).

Further, because the VBA is a more specific than the JWOD statute in that it

applies only to the VA for all of its procurements, the VBA must be read to take

precedence over the JWOD.  *See Arzio v. Shinseki*, 602 F.3d 1343, 1347 (Fed. Cir. 2010)

(citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992)) ("A basic tenet

of statutory construction is that a specific statute takes precedence over a more general

one.").  This conclusion was stated in *Angelica Textiles* as follows:

> The Veterans Benefits Act is a specific mandate to the Department…to
> grant first priority to [service-disabled veteran-owned small businesses] and
> [veteran-owned small businesses] in the awarding of contracts. On the other
> hand, the Javits-Wagner-O'Day Act is a more general procurement statute.
> Were there a conflict between the two statutes, the more specific Veterans
> Benefits Act would control.

*Angelica Textiles,* 95 Fed. Cl. at 222.  This court agrees with the *Angelica Textile* court's

reading of the statutes and thus finds that the VA has a legal obligation to perform a Rule

of Two analysis under the VBA when it seeks to procure eyewear in 2017 for VISNs 2

and 7 that have not gone through such analysis- even though the items were placed on the

AbilityOne List before enactment of the VBA.  The VA's position that items added to the

List prior to 2010 are forever excepted from the VBA's requirements is contrary to the VBA statute no matter how many contracts are issued or renewed.[9]

### C.    Laches

Regardless of the merits, the government also argues that PDS's claim for relief should be barred under the doctrine of laches with respect to PDS's challenges to contracts for VISNs 2 and 7, on the grounds that those items were listed on the AbilityOne List as far back as 2002.  The affirmative defense of laches "bars a claim when a plaintiff's 'neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party.'" *Nat'l Telecommuting Inst., Inc. v. United States*, 123 Fed. Cl. 595, 602 (2015) (quoting *Land Grantors in Henderson, Union, & Webster Counties v. United States*, 86 Fed. Cl. 35, 47 (2009)).  A party seeking to invoke laches must demonstrate two things: first "unreasonable and unexcused delay by the claimant," and second, "prejudice to the other party, either economic prejudice or 'defense prejudice'—impairment of the ability to mount a defense due to circumstances such as loss of records, destruction of evidence, or witness unavailability." *JANA, Inc. v. United States*, 936 F.2d 1265, 1269-1270 (Fed. Cir. 1991) (citing *Cornetta v. United States,* 851 F.2d 1372, 1377–78 (Fed. Cir. 1988)).

---

[9] The court rejects the defendants' contention that giving the VBA priority effectively repeals the JWOD by implication.  The VBA is a specific priority statute that does not mandate a result but a process which may or may not result in a contract award to a veteran-owned small business.  If the Rule of Two is not satisfied, the VA remains required under the JWOD to purchase products and services that appear on the AbilityOne List.  By its terms the VBA did not repeal the JWOD. Rather, as the VBA states, where the VBA applies the Rule of Two is satisfied, veteran-owned small businesses have the first priority.

With respect to the first element, the court finds PDS's delay in bringing this case was not "unreasonable and unexcused" in light of the recent decision in *Kingdomware*, which clarified the mandatory nature of the VBA and the VA's most procurement guidance which was issued on June 16, 2016.  With respect to the element of prejudice the court finds that IFB's allegations of prejudice are not sufficient to warrant the application of laches in this case.  IFB states:

> Since the inception the 2006 VA Act was passed through the current, IFB has spent considerable resources building an infrastructure to service the VISN 2, 7 and 8 contracts and to recruit and train the workers to perform under those contracts.  As such, IFB stands to suffer substantial harm by Plaintiff's delay.  IFB's financial investments and the human capital investments IFB's blind workers in reliance on the continuation of these contracts is clearly demonstrated . . .

IFB's MJAR 35-36.

As noted above, the court does not understand that PDS is challenging the existing contracts between IFB and the VA.  Rather, it is seeking only to prevent the VA from "making new contracting determinations, including contract awards," for VISNs 2 and 7 without first applying the Rule of Two.  Pl.'s Supp. Brief at 2.  Thus IFB will not lose all of its investment immediately.  In addition, the court is mindful that while IFB had expected that its contracts in VISNs 2 and 7 would be renewed as mandatory sources under the JWOD for years to come, IFB has had more than ten years of business following enactment of the VBA.  Indeed, application of the Rule of Two analysis may or may not result in loss of VISNs 2 and 7 work in the future.  In such circumstances, prejudice is not so great as to outweigh the VA's obligation to meet its statutory mandate under the VBA.  For these reasons, the government's laches defense is rejected.

24

## IV.     CONCLUSION

For the reasons stated above, IFB and the government's motions to dismiss under RCFC 12(b)(1) and motion for judgment on the administrative record are **DENIED**. PDS's cross-motion for judgment on the administrative record is **GRANTED**. The VA is ordered not to enter into any new contracts for eyewear in VISNs 2 and 7 from the AbilityOne List unless it first performs a Rule of Two analysis and determines that there are not two or more qualified veteran-owned small businesses capable of performing the contracts at a fair price.[10]

The parties shall have until **Friday, May 26, 2017** to submit a joint proposed judgment that shall include the expiration dates of all active contracts in VISNs 2 and 7 under the AbilityOne program, and shall include a timeline of the VA's plan to conduct a Rule of Two analysis for any further contracts.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge

---

[10] In its supplemental briefing following the change in the VA's guidance documents, PDS requested an order granting costs and reasonable attorneys' fees based upon the government's corrective action. The court will address this issue at a later date if PDS files a motion for fees and costs in accordance with the court's rules.